Case 4:17-cv-03277 Document 32 Filed on 04/25/18 in TXSD Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
April 25, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DR. C, A PSEUDONYM, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> EAST HOUSTON REGIONAL MEDICAL § <br> CENTER, D/B/A BAYSHORE MEDICAL § <br> CENTER, § <br> Defendant. § | CIVIL ACTION NO. 4:17-CV-3277 |

## MEMORANDUM AND RECOMMENDATION

This case is before the court on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 8) and motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA) (Dkt. 9).[1] Having considered the parties' submissions, argument of counsel at a hearing on February 20, 2018, and the law, the court recommends that the TCPA motion be granted and the Rule 12(b)(6) motion be granted in part and denied in part.

### I. Background

The following facts are alleged in Plaintiff's complaint and accompanying affidavit (Dkt. 1-2), as well as the affidavit submitted in response to Defendant's TCPA motion (Dkt. 15). Plaintiff, Dr. June Colman,[2] worked as a physician at Bayshore Medical Center (the Medical Center) in Pasadena, Texas. On June 2, 2017, she was notified that one of her patients was in the emergency room in labor with twins. She instructed the nurse who contacted her to admit the patient and drove to the hospital. While en route, Jeanna Bamburg, Chief Executive Officer of the Medical Center called Dr. Colman and told her that she was being suspended effective immediately.

---

[1] The district court referred these motions to this magistrate judge for report and recommendation (Dkt. 17).
[2] Dr. Colman was identified by the pseudonym "Dr. C" in her complaint, but confirmed at the hearing that there is no need to continue referring to her by a pseudonym in this case.

Dr. Colman contacted the hospital to inquire about her patient and was informed that another physician was attending the patient. When she arrived at the hospital she discussed the patient's medical history with the attending doctor, who was preparing to perform a cesarean section due to her unfamiliarity with the patient. While engaged in this discussion, administration officials approached Dr. Colman and in the presence of the patient's husband, physicians, and other medical center staff, Eric Evans, the Chief Executive Officer of the Eastern Houston Regional Medical campus, ordered Dr. Colman to leave the labor and delivery unit.

On June 7, 2017, Dr. Colman met with the Medical Executive Committee regarding the summary suspension. On June 9, 2017, Dr. Colman received a letter informing her that her clinical privileges remained suspended and that an Ad Hoc Investigating Committee would be appointed to conduct a formal investigation. The investigation apparently involved 5 patients — two in 2017, and one each in 2015, 2014, and 2012. Dr Colman alleges that as of June 2, 2017 when she was suspended, no external reviews had been conducted on the 2017 cases; external reviews regarding the 2014 and 2015 cases had concluded that she met the accepted standard of care; and an external review of the 2012 case concluded that the procedures she performed were clinically necessary and appropriate, but her care was not consistent with accepted standards.[3] On June 19, 2017, the Medical Center received the results of the external review of the 2017 cases, which found Dr. Colman met accepted standards of care. On June 27, 2017, when Dr. Colman met with the Ad Hoc Committee, her attorney requested that the committee review additional data, but he was not informed that external reviews had already exonerated her on 4 of the 5 cases that were the basis of her suspension. On June 29, 2017, the Ad Hoc Committee informed Dr. Colman it was lifting the suspension and imposing a proctoring requirement for her

---

[3] The 2012 case is the subject of an ongoing malpractice case in which Dr. Colman and the Bayshore Medical Center are defendants.

2

next 30 abdominal surgeries and 60 deliveries, as well as requiring additional continuing medical education. On July 12, 2017 the Medical Center informed Dr. Colman of its intent to report the proctoring requirement to the National Practitioner Data Bank (NPDB) and the Texas Medical Board.

On August 17, 2017, Dr. Colman received a letter from Bamburg stating that because Dr. Colman did not report on her 2015 Recredentialing Request for Consideration and Addendum that her care of patients in 2012 and 2014 was under investigation, "the Medical Center may determine that your privileges and membership are automatically relinquished." Dkt. 1-2 at 19. Bamburg gave Dr. Colman until August 23, 2017 to respond. *Id.* at 20. Dr. Colman received another letter from Bamburg on September 13, 2017, informing her that the Medical Executive Committee voted to lower the number of procedures for proctoring to 10 abdominal surgeries and 20 deliveries. To date, the Medical Executive Committee has not decided that Dr. Colman's privileges and membership are automatically relinquished.

Dr. Colman filed this lawsuit against Bayshore Medical Center on October 27, 2017 asserting causes of action for business disparagement under Texas common law and discrimination under 42 U.S.C. § 1981, and seeking declaratory and injunctive relief. On November 1, 2017, the district court granted a temporary restraining order preventing the Medical Center "from attempting or proceeding to submit a report to the National Practitioner Data Bank regarding Dr. Colman for actions that have been taken by the Medical Center during peer review." Dkt. 3.[4] The Medical Center has filed two motions to dismiss, one to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6), and one to dismiss the state law business

---

[4] The parties have agreed to extend the TRO until final conclusion of medical peer review proceedings. Dkt. 27.

3

disparagement claim under the TCPA, also known as the "Anti-SLAPP Act."[5] The two motions overlap regarding the state law business disparagement claim, but the court addresses the motions separately.

## II. Analysis

### 1. The motion to dismiss the business disparagement claim pursuant to the TCPA

#### 1.A. Applicability in federal court.

The TCPA creates a quick dismissal procedure "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002.[6] The threshold issue for the court is whether the TCPA applies in federal court.

The Fifth Circuit has not yet decided whether the TCPA applies in federal court. It is well settled by the *Erie* doctrine that federal courts sitting in diversity apply state substantive law and federal procedural law. *Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017). If there is a "direct collision" between a state substantive law and a federal procedural rule, federal courts apply the federal rule and do not apply the substantive state law. *Id.* In *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 168-69 (5th Cir. 2009), the Fifth Circuit stated without explanation: "Louisiana law, including the nominally-procedural Article 971 [the Louisiana anti-SLAPP statute], governs this diversity case." However, Fifth Circuit cases following *Henry* have

---

[5] SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 523 n.2 (Tex. App. —Corpus Christi 2015, no pet.).

[6] Motions to dismiss under the statute must be filed within 60 days of service of the lawsuit; the court must have a hearing within 60 days of filing of the motion (or up to 90 days for good cause); and the court must rule within 30 days of the hearing. *Id.* at §§ 27.003, 27.004. If the court fails to rule within the prescribed time limits, the motion is deemed denied and the movant may take an immediate appeal. *Id.* at § 27.008. Defendant agreed on the record at the February 20, 2018 hearing to waive the 30-day ruling requirement, which, as a procedural rule, may not apply in federal court.

4

acknowledged that "[t]he applicability of state anti-SLAPP statutes in federal court is an important and unresolved issue in this circuit." *Block*, 867 F.3d at 589 (citing 5th Circuit cases specifically noting the open question). The Fifth Circuit has not yet resolved the issue, continuing to "assume without deciding" the issue. *See, e.g., Cuba v. Pylant*, 814 F.3d 701, 706 (5th Cir. 2016) ("To decide whether the appeals are timely, we first review the TCPA framework, which we assume — without deciding — controls as state substantive law in these diversity suits."); *Block*, 867 F.3d at 589 (holding that Block's arguments against application of the Lousiana's anti-SLAPP statute had been forfeited). Faced with this uncertainty, district courts in the Southern District of Texas have opted to apply the TCPA.[7]

In *Khalil v. Mem'l Hermann Health Sys.*, Civil Action No. H-17-1954, 2017 WL 5068157 *14 (S.D. Tex. Oct. 30, 2017), the district court recognized that the Fifth Circuit has not decided whether the TCPA is substantive or procedural, but found persuasive the Fifth Circuit's "previous assumption that the [TCPA] applies in federal court and its application of the similar Louisiana anti-SLAPP statute." *Id.* (citing *Pylant*, 814 F.3d at 706-07, and *Henry*, 566 F.3d at 169). The court in *Banik v. Tamez*, Civil Action No. 7:16-cv-462, 2017 WL 1228498 *2 (S.D. Tex. Apr. 4, 2017) noted plaintiffs' citation to contrary decisions in district courts outside this circuit and in the D.C. Circuit, but like the *Khalil* court was persuaded by the Fifth Circuit's ruling in *Henry*. 2017 WL 1228498 *2 ("Since the Fifth Circuit has previously ruled on state anti-SLAPP statutes, and Plaintiff has not identified any contrary precedent in this Circuit, this

---

[7] Other district courts within the Fifth Circuit have also applied the TCPA. *See, e.g., Walker v. Beaumont Indep. Sch. Dist.*, Civil Action No. 1:15-cv-379, 2016 WL 1156852 *1 (E.D. Tex. Mar. 24, 2016); *Charalambopoulos v. Grammer*, 3:14-cv-2424-D, 2015 WL 390664 *1 (N.D. Tex. Jan. 2, 2015); *Forsterling v. A&E Tel. Networks, LLC*, Civil Action No. H-16-2941, 2017 WL 980347 *2 (S.D. Tex. Mar. 9, 2017). One court within the Circuit has held that the TCPA is procedural and even if it is substantive it does not apply because it conflicts with federal law, but this case appears to be alone. *Rudkin v. Roger Beasley Imports, Inc.*, Civil Action No. A-17-cv-846, 2017 WL 6622561 *3 (W.D. Tex. Dec. 28, 2017) (appeal filed Mar. 2, 2018).

Court has determined that the TCPA should apply in this case.").[8] *Williams v. Cordillera Communications*, Civil Action No. 2:13-cv-124, 2014 WL 2611746 (S.D. Tex. June 11, 2014), offers additional explanation:

> The TCPA is procedural in that it has specific time constraints, places a stay on discovery, and requires an expedited decision with accelerated appellate process. . . . . However, these procedural features are designed to prevent substantive consequences – the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit under state law regarding defamation.

2014 WL 2611746 *1. The *Williams* court also found the *Henry* decision persuasive because "[t]here is no material difference between the Louisiana and Texas anti-SLAPP statutes." *Id.* at *2. This court will follow the lead of other courts in the Southern District of Texas by applying the TCPA to Plaintiff's state law business disparagement claim in this case.

### 1.B. The TCPA's burden shifting scheme

Under the TCPA, the movant bears the initial burden to show that the activity that is the basis for the claim is protected by the statute. Here, that means Defendant must show that the business disparagement claim infringes its rights to free speech, free association, or right to petition. TEX. CIV. PRAC. & REM. CODE § 27.003(a). "The statute broadly defines 'the exercise of the right of free speech' as 'a communication made in connection with a matter of public concern.'" *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015); *see also Exxon v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) ("The TCPA does not require that the statements specifically "mention" health, safety, environmental, or economic concerns, nor does it require more than a "tangential relationship" to the same").

---

[8] The *Banik* court also found "no binding precedent requiring application of state anti-SLAPP procedural rules," such as the hearing and ruling deadlines imposed on the court. 2017 WL 1228498 * 4. As noted in footnote 6, this court need not decide whether the procedural deadlines governing the time for the court to rule under the anti-SLAPP statute bind this court because Defendant agreed at the hearing to waive them in this case.

If the defendant meets this burden, the burden shifts to the plaintiff to show "clear and specific evidence" that establishes a prima facie case for each element of her business disparagement claim. This requirement "is more like a pleading requirement than a summary judgment standard" and "[a] party need not provide 'evidence' in the traditional sense if the pleadings are sufficiently clear." *Cuba*, 814 F.3d at 711 and n.13; *see also In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (a prima facie case requires "the minimum quantum of evidence necessary to support an inference that the allegation of fact is true").

Finally, "under the [TCPA] even if a plaintiff meets her burden of showing the elements of her prima facie case, the court must dismiss the claim if the defendant presents a valid defense supported by a preponderance of the evidence." *Khalil*, 2017 WL 5068157 at *22; TEX. CIV. PRAC. & REM. CODE § 27.005(d). Both the Texas medical peer review immunity statute and the federal Health Care Quality Improvement Act (HCQIA) provide immunity for health care entities acting in the course of a medical peer review. TEX. OCC. CODE ANN. § 160.010(b) ("A cause of action does not accrue against a member, agent, or employee of a medical peer review committee or against a health care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of medical peer review."); 42 U.S.C. § 11111(a)(1) (a professional review body "shall not be liable in damages under any law of the United States or of any State . . . with respect to [a professional review] action.").[9]

### 1.C. The Medical Center's immunity defense

Because Defendant's immunity defense is dispositive of Plaintiff's business disparagement claim, the court considers it first. A defendant is entitled to immunity under the Texas medical peer review statute unless the plaintiff can show the defendant acted with malice.

---

[9] Dr. Colman's complaint contains allegations that the Medical Center is not entitled to immunity under the Health Care Quality Improvement Act (HCQIA). Dkt. 1 at 6-7. The complaint does not mention the Texas immunity statute.

*Maewal v. Adventist Health Sys.*, 868 S.W.2d 886, 893 (Tex. App.—Fort Worth, 1993, writ denied). Under Texas law, there is a presumption that an entity acts in good faith in peer review proceedings. *Id.* To overcome the presumption a plaintiff must show the defendant acted with "specific intent to harm." *Kinnard v. United Reg'l Health Care Sys.*, 194 S.W.3d 54, 57 (Tex App.—Fort Worth 2006, pet. denied).[10] Under the HCQIA, the immunity applies as long as the defendant acted "in the reasonable belief that the action was in the furtherance of quality health care," after a reasonable effort to obtain facts, including notice and hearing procedures, and in the reasonable belief that the action was warranted. 42 U.S.C. § 11112(a). The HCQIA also presumes that a professional review action meets required standards. *Id.*

Dr. Colman's Complaint explicitly uses the term "malice," but upon examination, her allegations fall far short of showing malice. On June 2, 2017, the Medical Center informed Dr. Colman it was summarily suspending her privileges because it believed her "care [was] a threat to the life, health or safety of patients and that failure to take prompt action may result in imminent danger to the life, health or safety of patients." Dkt. 1-2 at 5. This concern was based on Dr. Colman's care of 5 patients, two in May 2017. *Id.*; Dkt. 1 at ¶9. While an external reviewer concluded that Dr. Colman "met the applicable standard of care" in the two most recent cases, it is undisputed that the Medical Center did not have the results of the external investigation when it issued the June 2, 2017 suspension. *See* Dkt. 1 at ¶¶ 10, 13; Dkt. 14 at 2 ("At the time of Dr. Colman's summary suspension, the [Medical Center] had not received external reviews of the two May 2017 cases."). The Medical Center appointed an Ad Hoc

---

[10] There is some question as to the definition of malice in this context. In *Jenkins v. Methodist Hosps. of Dallas, Inc.*, No. 3:02 CV 1823-M, 2004 WL 3393380, at *11 (N.D. Tex. Aug. 14, 2004), the court concluded it "must analyze whether Plaintiff has proffered evidence that the Defendants acted with 'knowledge that an allegation is false or with reckless disregard for whether the allegation is false'" (citing *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996) and *Maewal v. Adventist Health Sys.*, 868 S.W.2d 886, 893 (Tex. App.—Fort Worth, 1993, writ denied)). *Kinnard's* "specific intent to harm" standard, coming 2 years after *Jenkins*, is a more recent statement of Texas law on the malice standard. In any event, Dr. Colman cannot satisfy either standard.

Investigating Committee to conduct a formal investigation of the two 2017 cases, as well as the three prior cases. On June 29, 2017, the Medical Center withdrew Dr. Colman's suspension and imposed proctoring requirements. Dkt. 1 at ¶¶ 13-20. To date, the Medical Center has not reported any of these proceedings to the National Practitioner Data Bank (NPDB) or Texas Medical Board (TMB). As far as the court is aware, the Medical Center's peer review proceedings regarding Dr. Colman are ongoing.

None of the above facts suggest that the Medical Center acted with the intent to harm Dr. Colman. Dr. Colman clearly disagrees with the Medical Center's handling of this matter, but nothing suggests that it suspended her for any purpose other than its concern for the health and safety of patients. *See Kinnard*, 194 S.W.3d at 58 ("Dr. Kinnard was required to present evidence that appellees had a specific intent to cause substantial injury or harm to him. Mere evidence that appellees did not conduct an adequate investigation and had ulterior motives is not sufficient to establish such an intent"); *see also Khalil*, 2017 WL 5068157 at *23-24 (allegations that Memorial Hermann discouraged Khalil from re-applying and refusing to offer her any alternative guidelines for renewal of her privileges did not satisfy requirement to allege malice). Dr. Colman has not overcome the presumption of immunity afforded to the Medical Center under Texas and federal law.

### 1.D.   **Plaintiff's prima facie case**

To the extent Plaintiff argues that immunity does not apply in this case because Defendant did not follow proper procedures under the HCQIA,[11] or because it made false

---

[11] In arguing against immunity, Dr. Colman relies heavily on provisions of the HCQIA requiring a reasonable belief that defendant was acting in the furtherance of quality health care, citing *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008), as well as requiring notice and hearing procedures be afforded to the physician, citing 42 U.S.C. § 11112(a). Dkt. 12 at 7-8. Dr. Colman's complaint makes clear that the Medical Center has afforded notice and hearing procedures regarding her suspension and proctoring requirements, albeit not before June 2, 2017. Nonetheless, the procedural requirements of hearing and notice are not embedded in the Texas immunity statute that protects Defendant in this case. *See* TEX. OCC. CODE ANN. § 160.010(a).

9

statements outside the peer review context, Dr. Colman's business disparagement claim is subject to dismissal nonetheless, due to her failure to meet her prima facie burden on each element of the claim. To survive Defendant's TCPA motion, Dr. Colman must provide "clear and specific" evidence on each element of her business disparagement claim.[12] To establish a business disparagement claim under Texas law, Dr. Colman must show that Defendant: (1) published false and disparaging information about Dr. Colman's practice; (2) with malice; (3) without privilege; and (4) caused her to suffer special damages. *Forbes Inc. v. Granada Biosciences Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

The Medical Center contends that Colman cannot meet her burden on the first element because to date it has not "published" the information of Colman's suspension to any licensing board. Colman alleges[13] that despite the fact that the Medical Center has not directly reported any adverse action to the NPDB or state medical board, she is required to self-report the suspension of privileges in any application for employment, licensure, or hospital privileges. In addition, Dr. Colman alleges the Medical Center published false and disparaging information when administrators "directly communicated [news of her suspension] to Dr. Colman's patients, members of the hospital staff, and other physicians." Dkt. 14 at 11; *See* Dkt. 15 at ¶ 6 ("In the presence of the patient's husband, physicians, and staff of the Medical Center, Eric Evans, the Chief Executive Office[r] of the Easton [sic] Houston Regional Medical campus, ordered me to leave the labor and delivery unit.").

---

[12] Dr. Colman's response to the motion to dismiss under the TCPA does not address, much less rebut, the Medical Center's contention that her claim infringes its free speech rights. *See* Dkt. 14. Thus, the court concludes that it is undisputed that defendant has met its initial burden to show its right to invoke the TCPA.

[13] Dr. Colman submitted an affidavit in support of her Complaint and the court considers the information contained in the affidavit to be incorporated in the Complaint. Dkts. 13, 15.

Dr. Colman has not met her burden to present clear and specific evidence with respect to publication by the Medical Center of false and disparaging information. She cites no authority to support her theory that her duty to self-report the investigations and suspension is "tantamount to publication." Dkt. 12 at 10. In addition, she has not provided clear and specific evidence that the information allegedly published to various individuals on June 2, 2017 was false and disparaging.[14]

With respect to the second and third elements of her claim, Dr. Colman alleges that the Medical Center acted with malice and without privilege because it summarily suspended her based on older cases in which she was cleared of any wrong-doing, and it did so before appointing an *ad hoc* committee to investigate the only two cases that occurred during 2017. The Texas Supreme Court has held "a business disparagement defendant may be held liable only if he knew of the falsity or acted with reckless disregard concerning it, or if he acted with ill will or intended to interfere in the economic interest of the plaintiff in an unprivileged fashion." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). Dr. Colman's allegations do not establish that the Medical Center acted with malice in publishing false or disparaging information about her. As stated above, there is no allegation that the Medical Center actually made any false statement. In addition, the Medical Center is required under state and federal laws, including the Texas Occupation Code § 160.002 (relating to Texas Medical Board reporting), and 45 C.F.R. 60.12(a)(i) (relating to NPDB reporting), to report its investigation and suspension of Dr. Colman. Dr. Colman's conclusory assertion that "without privilege, [d]efendant maliciously and directly published disparaging information about Dr. Colman to various other individuals, causing her to suffer special damages," Dkt. 14 at 11, is insufficient to

---

[14] At the hearing on February 20, 2018, Dr. Colman's counsel argued that the Medical Center did not have good cause to suspend Dr. Colman, but he conceded that statements hospital personnel made to Dr. Colman's patients at the hospital on June 2, 2017 regarding the suspension of her privileges were true.

satisfy the malice and without privilege elements of a business disparagement claim under Texas law.

The fourth element of a business disparagement claim is special damages. This element requires a plaintiff to present evidence of "direct, pecuniary loss attributable to the false communication" of defendant related to a peer review proceeding. *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996); *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987) ("[T]he communication must play a substantial part in inducing other not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established."). Special damages for a business disparagement claim are synonymous with economic damages as distinguished from general damages. *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, No. 08-16-00173-CV, 2017 WL 4534331, at *14 (Tex. App.—Houston[1st Dist.] Oct. 11, 2017). Dr. Colman's affidavit states that the Medical Center's actions "have caused me significant financial hardship and loss of income," and she has "lost income and earning potential" as a result of scheduling realignments in her practice group and of being removed from the emergency room "on call" schedule, and due to "the loss of patients who were unable to transfer to other hospitals and facilities" where she has privileges. Dkt. 15 at ¶ 17. Dr. Colman has not pointed to any specific patient she has lost or any specific instance of re-scheduling, and has not attempted to put a dollar amount on her damages. Given that the Medical Center has not yet reported the peer review findings, these damages are not directly related to the alleged business disparagement (as opposed to related to her suspension in general, which she has alleged was wrongful for other reasons).[15] *See Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 628 (Tex. App. — Fort Worth, 2007 pet. denied) ("To prove special damages, the

---

[15] To the extent Dr. Colman bases her business disparagement claim on statements made within the hearing of a patient and her husband at the hospital on June 2, 2017, there is no alleged connection between that communication and her alleged loss of business.

12

plaintiff must prove that the disparaging communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings."). Keeping in mind that Dr. Colman's burden at this stage is not as high as on summary judgment, the court nonetheless finds these conclusory allegations insufficient to survive the motion to dismiss. *See Garton v. Shiloh Vill. Partners, LLC*, No. 12-16-00286-CV, 2017 WL 6884451, at *6-7 (Tex. App.—Tyler, Aug. 23, 2017) (general pleading that defendant's actions caused damage to the goodwill of the company and its reputation and statement that defendant's "actions are intended to harass and threaten my company and [my] reputation," "are not a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA.").[16]

### 1.E. Conclusion and recommendation on the TCPA motion

Because the TCPA applies to Dr. Colman's state law business disparagement claim; because she has not met her burden to overcome the presumption of immunity for the Medical Center in peer review proceedings; and because she has not provided clear and specific evidence on each element of her business disparagement claim, the court recommends that Medical Center's motion to dismiss Dr. Colman's business disparagement under the TCPA should be granted.

### 2. The Rule 12(b)(6) Motion

#### 2.A. Rule 12(b)(6) standards

In reviewing a pleading under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v.*

---

[16] The parties represented at the hearing on February 20, 2018 that the Medical Center is closed due to damage suffered during Hurricane Harvey, preventing Dr. Colman from practicing at the facility after August 25, 2017.

*Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999)). However, only facts are entitled to an assumption of truth; legal conclusions unsupported by factual allegations do not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678; *Gonzalez v. Kay,* 577 F.3d 600, 603 (2009). Although Dr. Colman submitted an affidavit in response to the TCPA motion, the motion to dismiss pursuant to Rule 12(b)(6) must be decided on her pleading alone. Fed. R. Civ. Pro. 12(d); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992) ("We may not look beyond the pleadings" on a 12(b)(6) motion).

### 2.B. Business Disparagement

The court discussed Dr. Colman's business disparagement allegations in detail in connection with its TCPA analysis. It is not necessary to duplicate that discussion here. As the Fifth Circuit and the Texas Supreme Court have recognized, the TCPA standards are "more like a pleading requirement than a summary judgment standard." *Cuba,* 814 F.3d at 711; *Haynes v. Crenshaw,* 166 F. Supp. 3d 764, 770 (E.D. Tex. 2016) (The TCPA requires the plaintiff to "provide enough detail to show the factual basis for its claim" and has expressly stated that "mere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice"). While Rule 12(b)(6) does not require Dr. Colman to provide "clear and specific evidence" to demonstrate a prima facie case, the Rule does require allegations sufficient to allow the court to draw the reasonable inference that Defendant is liable for business

disparagement. *Iqbal*, 556 U.S. at 678. Thus, while the court is cognizant of the distinctions between the TCPA and Rule 12(b)(6), the court concludes that Dr. Colman has failed to state a claim under Rule 12(b)(6) standards for the same reasons set forth in sections 1.C and 1.D. As discussed in detail in those sections, Dr. Colman has not alleged facts that suffice to rebut the presumption that the Medical Center has immunity from liability for the conduct Dr. Colman alleges. Additionally, Dr. Colman has failed to allege sufficient facts to demonstrate that the Medical Center published false and disparaging information; acted with malice or the specific intent to harm Dr. Colman, and without privilege; and that Dr. Colman has incurred special damages. Therefore, the court recommends that Defendant's motion to dismiss the business disparagement claim pursuant to Rule 12(b)(6) be granted.

### 2.C. Dr. Colman's § 1981 claim

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). To establish a § 1981 discrimination claim, a plaintiff must allege that (1) she is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). The HCQIA provides no immunity to a health care facility from civil rights claims under 42 U.S.C. § 1981. 42 U.S.C. § 11111(a)(1).

Dr. Colman alleges that she is African-American, and that the Medical Center intentionally deprived her of the same rights and benefits of her employment afforded white

employees. She alleges that the Medical Center acted not in the furtherance of quality health care as it claims, but for discriminatory reasons. Dkt. 1 at ¶¶ 41-44. While Dr. Colman has alleged the elements of a § 1981 claim, she has not alleged many *facts* supporting the elements of her discrimination claim other than her status as a member of a racial minority. Only factual allegations are entitled to a presumption of truth, and a plaintiff must allege sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Conclusory allegations or legal conclusions masquerading as factual conclusion will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Desperado Motor Racing & Motorcycles v. Robinson*, Civil Action No. H-09-1574, 2010 WL 2757523 at *3 (S.D. Tex. 2010) ("[T]hreadbare recitals of the elements of [a cause of action] and conclusory statements are insufficient."). As it currently stands, Dr. Colman's Complaint does not allege sufficient facts regarding her § 1981 claim. *See Body by Cook, Inc.*, 869 F.3d at 387 (plaintiff's generalized allegations regarding defendant's alleged disparate treatment of non-minority entities were not specific enough to plead discriminatory intent). However, the peer review proceeding regarding her suspension is on-going, and additional information may be forthcoming.

Dr. Colman has requested leave to amend should the court "perceive deficiencies in [her] complaint," Dkt. 12 at 12. Leave to amend should be freely given in the interests of justice when requested before the deadline governing amendment of pleadings set forth in the court's scheduling order. Fed. R. Civ. Pro. 15(a). The deadline for Plaintiff to amend her Complaint is June 30, 2018.[17] The court should deny Defendant's 12(b)(6) motion as to Dr. Colman's § 1981 claim and allow her to amend her Complaint.

---

[17] By separate order on Plaintiff's motion to abate, this court has granted Plaintiff until June 30, 2018 to amend her Complaint.

16

### 2.D. Conclusion and recommendation on the Rule 12(b)(6) motion

For the reasons discussed above, the court recommends that the Medical Center's motion to dismiss Dr. Colman's claim for business disparagement be granted. The court further recommends that the Medical Center's motion to dismiss her claim for discrimination under 42 U.S.C. § 1981 be denied at this time and that Dr. Colman be given an opportunity to amend her Complaint to cure, if possible, the deficiencies with respect to the § 1981 claim.

### 3. Declaratory and injunctive relief

Defendants contend that under Texas law requests for declaratory or injunctive relief are not themselves causes of action, and therefore, if Dr. Colman's claims for business disparagement and discrimination are dismissed, her requests for declaratory and injunctive relief must also be dismissed. Dr. Colman does not contend otherwise, but asserts that she has pled valid causes of action. Dkt. 12 at 12-13. In this case, the court has not recommended dismissal all of Plaintiff's claims. In addition, the district court's previously issued TRO remains in effect pursuant to the agreement of the parties. Thus, it would be premature to dismiss Plaintiff's requests for injunctive and declaratory relief at this time.

### III. Conclusion and Recommendation

For the reasons discussed above, the court recommends that the Medical Center's motions to dismiss under the TCPA and Rule 12(b)(6) be **GRANTED** as to Plaintiff's business disparagement claim; its motion to dismiss under Rule 12(b)(6) be **DENIED** as to her claim under 42 U.S.C. § 1981; and that Plaintiff be granted leave to amend her Complaint on or before June 30, 2018.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28

U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

    The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 8608.

    Signed at Houston, Texas, on April 25, 2018.

Christina A. Bryan
United States Magistrate Judge